STRAUSS v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, Second Department. February 26, 1915.)

DAMAGES (§ 189*)—ACTION FOR BREACH OF CONTRACT—SUFFICIENCY OF EVIDENCE.

In an action against a city for breach of its contract to complete a subway station and entrance adjacent to plaintiff's premises by a certain date, evidence *held* insufficient to show that the plaintiff suffered any damage from the breach complained of.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 288, 512; Dec. Dig. § 189.*]

Appeal from Trial Term, Kings County.

Action by Julius Strauss against the City of New York. Judgment for plaintiff, and defendant appeals. Reversed, and new trial granted.

Argued before JENKS, P. J., and THOMAS, STAPLETON, RICH, and PUTNAM, JJ.

Frank Julian Price, of Brooklyn (Thomas F. Magner, of Brooklyn, on the brief), for appellant.

Benjamin Reass, of Brooklyn (Hugo Hirsh and Emanuel Newman, both of Brooklyn, on the brief), for respondent.

THOMAS, J. The complaint is that the defendant agreed to construct, between May 1, and October 1, 1906, a subway station and stairway "in so far as the same involves the work of building an entrance thereto upon or adjacent to" plaintiff's premises, but that it failed to do so, whereby plaintiff lost some of the benefit of a lease of his building. The plaintiff's property is at the northwest corner of Fulton and Bridge streets, and, as the agreement shows, plaintiff's firm intended to begin on May 1, 1906, to construct a new building to be ready for occupancy on the following October 1st, and a lease thereof had been made for 10 years, beginning September 15, 1906, which contained the stipulation that, if the building was not completed by October 10th, the rent should not begin until February 1, 1907. It was not completed, and the plaintiff was obliged to make some concessions to the lessees. The plaintiff alleges that the defendant failed to complete the "said station and stairway by October 1, 1906," and that they were "not constructed and completed until about February 1, 1908, and by reason thereof this plaintiff" was "unable to complete the construction" of the said building.

---

The agreement with the city contained a grant of easements in Fulton and Bridge streets for the construction of a railway in a subway in front of plaintiff's property, together with a station and stairway therefor. The record is taken up in large degree with evidence relating to progress in constructing the subway, station, sidewalk, and walls on Fulton street, together with a passage to the opposite side, which matters, if admissible at all, are merely instructive of the single issue: Did the defendant fail to construct duly the entrance on Bridge street "upon or adjacent" to plaintiff's premises, and, if so, what damages flowed from it? On this primary issue the evidence is so very scant that it is difficult, if not impossible, to know more than the bare fact that the entrance was not built by October 1, 1906, and was not finished until some time in 1907 or 1908. What was unfinished, and the effect of the incompleteness upon the occupancy of the building, is in too great confusion to permit intelligent and just decision. The contest was transferred to conditions in Fulton street, and the harm to the rental value seems to be predicated largely upon that.

It is true that the plaintiff, from a point in Bridge street 40 feet from Fulton street, boarded the east side of his basement and carried the inclosure along the front of the building on Fulton street, and that he built a partition across the basement, so as to exclude from use the front 40 feet thereof, and for this he demanded, and has received probably, substantial award. But the unsatisfactory reason given for it is that it was necessary that the subway workers should have an opportunity to come in the excluded place to work. There is no evidence that any one asked for such accommodation, and Mr. Frost, the assistant engineer for the Public Service Commission, stated that there was no necessity for the workmen to go on the premises. The plaintiff testified that on October 1, 1906, the basement was completed, "except that the entire Fulton street front was open. We had not inclosed it at all, could not inclose it, and the front of our building was on shores." He ascribes that condition to the failure of the subway contractor to put down sidewalks, to finish the station, to furnish girders, and later he describes how it was necessary to support the show windows on Fulton street. It appears that there were also to be show windows on Bridge street, but that very vital location is almost entirely neglected. If there were delays or interruptions on Fulton street that affected the completion of the building, and caused loss of rent or outlay for maintenance, the issue does not cover such things.

What was the failure on Bridge street, and how did it physically detract from the usefulness of the building? How did it affect the rent stipulated? How did it cause extra expenditure? Little is known or said about that. The plaintiff was asked:

"Q. Will you tell the court specifically what the particular omissions on the part of the city were which you say caused the delay in your building? A. Do you want me to specify them all? The Referee: That is what he asked you to do. A. They should have put in their foundations for the stairway leading from Abraham & Straus' before we could do anything. They had to finish their excavation for this stairway. They had to put down the sidewalks on Fulton street and on Bridge street before we could finish our work.

They had to remove their underpinning of the old Horton structure before we could go ahead with our work. That is all I can think of just now."

It is barely possible that within the answer there is something that relates to the Bridge street entrance; but, if so, it is a matter of architectural relation that requires explanation. It would appear that the Bridge street entrance, which should be the sole issue, is made of lesser importance, and that the plaintiff would recover because the subway was not progressed sufficiently to permit the plaintiff to carry out his building plans as expeditiously as his lease demanded. Why could not the show windows on Bridge street be inserted, and the basement in that way closed up? Was it because the city had agreed to provide the wall upon which to rest them? I do not discover such duty placed on the city, although it may be so. The plaintiff's plans, as I understand, show a building resting upon its own foundations and independent of support from the side wall. What prevented the placing of the show window on Bridge street? Was it the duty of the defendant to furnish whatever they were to rest on? It is impracticable in the present state of the record to assign justly the damages that flow from failure to build the entrance. It is certain that other matters not in issue have materially contributed to the injury to the rental.

The damages awarded seem to be predicated upon loss of rental value. The question is what loss of rents has plaintiff suffered or incurred. The lessees paid no rent for October. They paid all rent after that to February 1st, less $1,500 remitted for injury to their occupation. They paid rent thereafter, although making some claims. If the failure to have the building ready for the lessees by October 10, 1906, affected the loss of rent, it cannot be recovered here, unless the condition of the entrance on Bridge street was a necessary cause of it; but nothing can be predicated upon any other conditions. But, even if the failure to have the entrance ready "upon or adjacent to the" premises of the plaintiff caused the loss, there could be but the loss of rent from October 1, 1906, to November 1, 1906, $2,166.67, and $1,500, the amount of the adjustment with the lessees to February 1, 1907, together with any later loss of rent actually suffered, or sum which the landlord actually owes his tenants on account of the unfinished entrance, and nothing else. Extra expenditures for maintenance from the same cause may also be considered.

The judgment should be reversed, and a new trial granted; costs to abide the event. All concur, except RICH, J., not voting.